NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHAMED KHAN and AZMA KHAN,<br><br>                            Plaintiffs,<br><br>    v.<br><br>CITY OF BAYONNE and STATE OF NEW JERSEY,<br><br>                            Defendants. | Civil Action No. 18-05825<br><br>OPINION |

**CECCHI, District Judge.**

This matter comes before the Court on the motion for summary judgment (the "Motion") (ECF No. 26) of Defendant City of Bayonne ("Defendant"). The Motion seeks judgment in favor of Defendant on all counts of the Complaint (ECF No. 1) ("Compl.") filed by *pro se* Plaintiffs Mahamed Khan ("Mahamed") and Azma Khan ("Azma") (collectively, "Plaintiffs"). The Court has considered the submissions made in support of and in opposition to the Motion. *See* ECF Nos. 27, 30, 31. The Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, Defendant's Motion is granted.

**I.    BACKGROUND**

This case arises from an alleged unconstitutional taking that resulted from the emergency demolition of Plaintiffs' property (the "Property") in 2016. *See* ECF No. 26-2 ("Def. SMF").[2]

---

[1] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

[2] Preliminarily, the Court notes that Plaintiffs failed to respond to Defendant's statement of material facts as is required by Local Rule 56.1(a). Thus, any fact in Defendant's statement which

1

Plaintiffs allege that Defendant's failure to properly maintain a sewer drainage system caused regular flooding on the Property, which apparently resulted in "damage and destruction to the Plaintiff[s'] dwelling." Compl. at 3-5. Among other assertions, Plaintiffs contend that the "[f]looding of the Property, citations, and subsequent intentional demolition all constitute protected takings of property." Id. at 6.

Plaintiffs maintain that sometime in or after July 2014 or July 2015,[3] Defendant began issuing citations to Plaintiffs because they refused to provide a refund to Dan Hall ("Hall"), the City Inspector of Defendant, for a carpet he purchased at Plaintiffs' carpet store. Id. at 3. Nevertheless, the record reflects that Plaintiffs received citations as early as 2011, prior to the alleged incident with Hall. Def. SMF ¶ 5 (citing ECF No. 26-5, Ex. B, Interr. Resp. ¶¶ 6-8); *see also* ECF No. 26-7, Ex. I, Constr. Code Citations. As to the claim that the citations were in retaliation for denying Hall a refund, Mahamed has conceded that "[t]here is no evidence in this

---

is adequately supported by the record is deemed admitted. Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."); *Maultsby v. Rih Acquisitions NJ, L.L.C.*, No. 09-4376, 2011 U.S. Dist. LEXIS 148267, at *1 n.1 (D.N.J. Dec. 27, 2011) ("For those statements of facts for which plaintiff did not properly deny with a citation to the record, and for which the Court finds supported in the record, the Court deems them admitted.") (internal citations omitted). Plaintiffs did, however, submit a collection of affirmations with their opposition brief. *See* ECF Nos. 30-1, 30-2, 30-3, 30-4. Given that Plaintiffs are *pro se*, the Court reviewed the affirmations, but found that they largely consist of conclusory statements, many of which contradict Plaintiffs' own deposition testimony. *See, e.g.*, ECF No. 30-1, Khan Aff. ¶¶ 30, 36, 41-43. As such, they are insufficient to establish genuine issues of material fact as to any of the points herein. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) ("[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.") (internal citations omitted). As Plaintiffs have failed to respond to Defendant's assertions of fact, the Court may grant summary judgment if, based on the motion, supporting materials, and the facts considered undisputed, it finds that Defendant is entitled to judgment as a matter of law. *See Humphrey v. PennyMac Holdings, L.L.C.*, No. 15-3622, 2017 U.S. Dist. LEXIS 117116, at *1 n.3 (D.N.J. July 26, 2017) (internal citations omitted).

[3] The Court notes that Plaintiffs have alleged two different dates, as reflected above, in their Complaint and interrogatory responses. *See* Compl. at 3; ECF No. 26-5, Ex. B, Interr. Resp. ¶¶ 6-8. The Court will consider both dates.

case." Def. SMF ¶ 61 (quoting ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 125:4-13).

Plaintiffs assert that they then challenged these citations in state court. Id. ¶ 6. Plaintiffs contend that at a hearing on February 19, 2013 (the "February 2013 Hearing"), the Honorable Frank Carpenter stated on the record that the "tickets clearly look[] like discrimination," and "dismissed . . . all charges." Id. (quoting Compl. at 4); *see also* id. ¶ 48 (quoting ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 50:18-23). Defendant, however, maintains that "far from calling the tickets 'discriminatory' or stating any of the other fictions alleged by Plaintiffs, Judge Carpenter made it clear that Azma was wise to plead guilty." Id. ¶ 52. After reviewing the transcript, the Court notes that there is nothing in the record to suggest that Judge Carpenter found the citations to be discriminatory, that Plaintiffs were being harassed, or that he "threw out all charges." Id. ¶¶ 48-56. In fact, it appears that an arrangement was worked out with Azma—since she was the record owner of the Property[4]—whereby Azma pleaded guilty to certain citations, agreed to pay a $1,000 fine, and the remaining citations were dismissed. Id. ¶¶ 3, 49-54 (citing ECF No. 26-7, Ex. J, Feb. 2013 Hear. Tr. at 4:16-23, 6:13-16). Plaintiffs have not produced any evidence indicating that they were subject to discriminatory conduct based on their religion, race, or national origin. Id. ¶¶ 57-60.

With respect to the flooding, although Plaintiffs initially alleged in their Complaint that the flooding came from *outside* of the Property, that allegation is not supported by the record, and indeed Mahamed testified at his deposition that the flooding resulted from a broken pipe *under* the

---

[4] The Court notes that in a supplemental letter (ECF No. 45), Defendant refers to a different owner of the Property than Plaintiffs and references a settlement agreement between the current owner of the Property and Defendant. ECF No. 45 at 3 n.4. This potential change in ownership appears to have occurred in 2017 and does not affect the Court's analysis of Plaintiffs' claims as Plaintiffs have identified the relevant period as October 5, 2011, to April 1, 2016. *See* ECF No. 45-5 at 2; ECF No. 26-6, Ex. E, DOJ Tort Claims Notice at 2.

Property.[5] Id. ¶ 16. Additionally, in their interrogatory responses, Plaintiffs stated that the flooding occurred due to a "storm drain pip[e] broken *under* my property . . . which had cause[d] flooding over seven feet[] dozens of times." Id. ¶ 17 (emphasis added). Plaintiffs testified that they have no documentation demonstrating that the pipes *under* the Property are owned and serviced by Defendant, and they further stated that they never repaired the broken pipe *under* the Property. Id. ¶¶ 18-19. Defendant affirmatively maintains that it "neither owns nor controls the storm drains located directly below the Property," and as such, it argues that "it cannot be liable for any damages caused by flooding allegedly emanating from the leaking pipe under the Property." ECF No. 27 at 24-25.

As a result of the citations issued to Plaintiffs, Defendant retained engineer Paul Del Rosario ("Rosario") of CME Associates to inspect the Property. Def. SMF ¶ 20. On March 8, 2016, Rosario inspected the Property, and afterwards, opined that "the structure must be demolished immediately in order to abate an unsafe condition to avoid damage or injury to persons or property." Id. ¶¶ 21-22. Additionally, around May 17, 2013, Plaintiffs hired Kawalek + Kawalek Architects ("K+K") to inspect the Property. Id. ¶ 23. K+K also opined, almost *three years* before Rosario, that "the [Property] is unhabitable, and the best course of action would be to demolish it." Id. ¶¶ 24-25 (quoting ECF No. 26-6, Ex. G, K+K Report at 1). On March 9, 2016, Defendant issued a demolition notice (the "Demolition Notice") to Azma, which Plaintiffs admitted they received, advising her that the Property was an "imminent hazard" pursuant to N.J.S.A. § 52:27D-132 and N.J.A.C. § 5:23-2.32 because it risks collapse, the "foundation on the right side is sinking and compromised," the Property "poses a risk to the welfare of the public," and that it "MUST be addressed immediately." Def. SMF ¶¶ 26, 29 (quoting ECF No. 26-7, Ex.

---

[5] While Plaintiffs identified only one instance of alleged flooding that emanated from outside the Property, they conceded that the pipe was promptly fixed by Defendant. Def. SMF ¶ 15 (citing ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 63:20-25).

4

H, Demo. Notice at 2). The Demolition Notice also provided instructions on how to contest Defendant's demolition determination by requesting a stay "to a court of competent jurisdiction within 24 hours," which Plaintiffs apparently chose not to do. Id. ¶ 28 (citing ECF No. 26-7, Ex. H, Demo. Notice at 1). Azma admitted that the "house is dangerous and need[s] to be demolished," but she disagreed with the process Defendant utilized before demolition. Id. ¶ 30. However, when asked whether additional processes were required prior to demolition, Azma could not articulate any. Id. ¶ 31.

The demolition was performed by Control Industries, Inc. ("Control"), and though it was originally scheduled for March 11, 2016, the demolition was invoiced on April 6, 2016. Id. ¶¶ 27, 34. Thus, the demolition occurred at some point within that timeframe. *See* id. A breakdown of all the outstanding construction code citations and demolition fines were produced to Plaintiffs by Defendant through discovery. Id. ¶ 34. In sum, the total amount owed by Plaintiffs to Defendant was roughly $187,000 as of the filing of the Motion. Id. ¶¶ 35-36.

There were also proceedings instituted in Bayonne Municipal Court concerning all of the construction code citations that are at issue in the immediate dispute. Id. ¶¶ 38, 46. According to the latest update from the parties, those proceedings may be moot given Defendant's settlement with the current owner of the Property, which appears to have resolved the outstanding citations.[6] *See* ECF No. 45.

Plaintiffs admit that they failed to serve a tort claims notice on Defendant for the conduct alleged in the Complaint. Def. SMF ¶ 12. However, they did attempt to file one with the United States Department of Justice for the same alleged conduct, but that was denied because federal

---

[6] The Court notes Defendant's assertion that the referenced settlement may have rendered Plaintiffs' request for Defendant to cease collection efforts moot. *See* ECF No. 45 at 3 n.4 ("In light of this settlement, Defendant dismissed all pending Municipal Court actions related to the property and can no longer seek payment from Plaintiffs, necessarily mooting any demand that Defendant be enjoined from seeking payment from Plaintiffs for the demolition.").

5

employees were not involved. Id. ¶¶ 13-14 (citing ECF No. 26-6, Ex. E, DOJ Tort Claims Notice). Plaintiffs also failed to produce many documents requested in discovery (*e.g.*, expert reports, medical records related to the emotional distress claims, documents evidencing damages), never performed an appraisal of the Property, and confirmed that they will not utilize any medical records in this case.[7] Id. ¶¶ 64-72.

## II. PROCEDURAL HISTORY

The Complaint in this action was filed on April 10, 2018. *See* Compl. Plaintiffs assert four claims in the Complaint: 1) a taking pursuant to 42 U.S.C. § 1983 ("§ 1983"); 2) intentional infliction of emotional distress; 3) extortion; and 4) trespass to land, chattel and conversion. *See* Compl. Defendant filed an Answer on October 2, 2018. ECF No. 10. Defendant filed its present Motion for summary judgment on November 20, 2019, seeking judgment in its favor as to all counts of the Complaint. ECF No. 26.

## III. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986); Fed. R. Civ. P. 56(c).

---

[7] All discovery in this matter was closed in November 2019, Plaintiffs did not submit any expert reports at that time, and have not tried to since. *See* ECF No. 15. Additionally, even if the affirmations submitted by Plaintiffs were not conclusory, Plaintiffs have presented no evidence to establish that these individuals are qualified to opine on issues like the cause of the flooding. *See, e.g.*, ECF No. 30-3, Dawood Aff. ¶ 9. The lack of expert reports, especially with matters as complex as sewer drainage systems, is potentially fatal to Plaintiffs' claims as well. *See McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 267 (3d Cir. 2017) ("Expert evidence is generally required when an issue is beyond the ken of a lay jury.").

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . [the opponent must] exceed[] the 'mere scintilla' threshold.").

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV. **DISCUSSION**

Defendant offers numerous reasons as to why its Motion should be granted. *See* ECF No. 27. The Court agrees with most. For the sake of completeness, the Court will address both the procedural and substantive reasons for its decision to grant Defendant's Motion in its entirety.

### A. Procedural Defects

i. <u>Statute of Limitations</u>

Defendant argues that all of Plaintiffs' claims are subject to a two-year limitations period. ECF No. 27 at 15-16. Since all alleged actionable conduct occurred more than two years before Plaintiffs commenced this action on April 10, 2018, Defendant argues that all counts are completely barred. Id. at 16-18. Plaintiffs appear to argue that pursuant to the continuing wrong doctrine, the limitations period should be extended due to Defendant's alleged repeated demands for Plaintiffs to pay costs associated with the construction code citations and demolition. ECF No. 30 at 3-6. They alternatively contend that the statute of limitations should be equitably tolled. Id. at 4. The Court finds all Plaintiffs' claims to be time-barred.

N.J.S.A. § 59:8-8(b) provides a two-year limitations period for state law claims dealing with personal injury and property damage. Thus, the claims of intentional infliction of emotional distress, extortion, and trespass/conversion (*i.e.*, Counts II-IV) will be subject to this time-bar if two years "have elapsed since the accrual of the claim." Id.[8] As for the § 1983 claim (*i.e.*, Count I), "[i]n determining the length of the statute of limitations for a claim arising under § 1983, courts must apply the limitations period applicable to personal-injury torts in the State in which the cause of action arose." *Williams v. Borough of Highland Park*, 707 F. App'x 72, 75 (3d Cir. 2017) (quoting *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014)). Therefore, the two-year limitations period of N.J.S.A. § 59:8-8 also applies to Plaintiffs' § 1983 claim. Accordingly, all of Plaintiffs' claims are subject to the two-year statute of limitations.

After a review of the record, the Court finds that the latest possible date the claims could have accrued is April 6, 2016—the date when Control invoiced the costs for the demolition. *See* ECF No. 26-7, Ex. I, Control Invoice. All other potential accrual dates (*e.g.*, notice of the

---

[8] Extortion (*i.e.*, Count III), is not a legally cognizable civil claim in New Jersey, as will be discussed later in this Opinion.

8

construction code citations, the February 2013 Hearing, the date Plaintiffs received the demolition notice, and the actual demolition) occurred prior to April 6, 2016. Additionally, in their failed tort claims notice filed with the DOJ, Plaintiffs conceded that the period of the alleged conduct ranged from October 5, 2011, to April 1, 2016. ECF No. 26-6, Ex. E, DOJ Tort Claims Notice at 2. Thus, it is undisputed that all the alleged wrongful conduct occurred more than two years prior to the filing of the Complaint on April 10, 2018, and as such, all claims must be time-barred.

Plaintiffs' argument that the continuing wrong doctrine is applicable here is without merit. ECF No. 30 at 4. "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same *unlawful* . . . practice and that at least one act falls within the applicable limitations period." *Williams*, 707 F. App'x at 76 (emphasis added) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013)). Plaintiffs' argument misses the distinction highlighted by the Third Circuit in *Williams* between "continual unlawful acts" and "continual ill effects from an original violation." *Id.* (denying application of the continuing wrong doctrine where a municipality's subsequent request for payment stemmed from an initial violation that was never remedied by plaintiffs). Defendant's previous legal requests to be paid monies owed for the construction code citations and to be reimbursed for the demolition costs, pursuant to N.J.A.C. § 5:23-2.32,[9] are not "unlawful acts," and cannot be a proper basis for the continuing wrong doctrine. *See Williams*, 707 F. App'x at 76.

Equitable tolling is also not applicable here, as Plaintiffs have not sufficiently demonstrated that they "diligently pursued [their] rights," or that "extraordinary circumstances" stood in the way of the timely filing of their Complaint. *See D.J.S.-W v. United States*, 962 F.3d 745, 752 (3d Cir.

---

[9] The applicable authority states that "[c]osts incurred in the performance of emergency work shall be paid from the treasury of the jurisdiction on certificate of the construction official; and the legal authority of the jurisdiction shall institute appropriate action *against the owner of the premises for the recovery of such costs*." N.J.A.C. § 5:23-2.32(b)(5) (emphasis added).

9

2020) (citing *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755-56 (2016)). Plaintiffs maintain in their opposition brief, without factual support, that they were told by Defendant that they could not file a claim. ECF No. 30 at 6. Defendant asserts that "Plaintiffs have not set forth a single fact" that would require the application of equitable tolling. ECF No. 31 at 9. Plaintiffs' allegation, without any evidentiary support, is not enough to necessitate equitable tolling, and thus, the claims are time-barred.[10]

    ii.    <u>Failed Tort Claims Notice</u>

Defendant argues that Plaintiffs' failure to file a tort claims notice before instituting this action is an uncurable defect that also serves as a complete bar to Counts II-IV. ECF No. 27 at 18-19. Plaintiffs request that the Court order the Defendant to allow a late tort claims notice. ECF No. 30 at 6. The Court agrees with Defendant; Plaintiffs' failure to properly file a tort claims notice serves as an additional procedural bar with regards to Counts II-IV.

N.J.S.A. § 59:8-8 provides that notice for "a claim relating to a cause of action for death or for injury or damage to person or to property shall be presented . . . not later than the 90th day after accrual of the cause of action." Therefore, giving Plaintiffs the benefit of the doubt with an accrual date of April 6, 2016, as established above, the tort claims notice must have been filed with

---

[10] Lastly, Plaintiffs may not amend their Complaint to include an invasion of privacy claim. Pursuant to the Pre-Trial Scheduling Order, the deadline to file a motion to amend pleadings was March 18, 2019. *See* ECF No. 15. Therefore, the request to amend is not timely. Even if the request was timely, the allegations proffered regarding the invasion of privacy claim do not rise above the speculative level. *See* ECF No. 30 at 4-5. Plaintiffs assert that Mahamed's likeness was used in a recent newspaper article, "which was done to publicly humiliate him and has caused him to suffer severe financial setbacks in his carpet business." Id. at 4-5. The allegations assume that Defendant either owned or is otherwise connected to the newspaper that allegedly used Mahamed's likeness. *See* id. Defendant argues that "there is no basis to assume" that it should be liable for the "conduct of private businesses." ECF No. 31 at 11. Moreover, Plaintiffs have not appeared to identify a specific newspaper article at issue, although Defendant attaches a 2019 article concerning Mahamed that is entirely unrelated to this action. ECF No. 31-1, Ex. N, Oct. 8, 2019 Article from Mycentraljersey.com. Accordingly, Plaintiffs have not shown that they should be granted leave to amend their Complaint.

Defendant by July 6, 2016. However, Plaintiffs conceded that they did not serve a tort claims notice on Defendant at all. ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 148:15-22. Even assuming Plaintiffs' tort claims notice that was served on the DOJ was adequate, it was filed on January 18, 2018, approximately a year and a half past the statutory deadline. *See* ECF No. 26-6, Ex. E, DOJ Tort Claims Notice at 1. Further, pursuant to statutory law, courts may only extend the deadline to file a tort claims notice for a period "not exceeding one year following accrual of the cause of action." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 234 (D.N.J. 2015) (citing N.J.S.A. § 59:8-9). "[I]n *no event* may any suit against a public entity . . . arising under this act be filed *later than two years* from the time of the accrual of the claim." N.J.S.A. § 59:8-9 (emphasis added). Here, Defendant is a public entity, and as mentioned previously, this lawsuit was filed more than two years after the accrual of the claim. *See* N.J.S.A. § 59:1-3 ("'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the state."). Thus, failure to properly file a tort claims notice serves as an additional procedural bar to Plaintiffs' state tort claims (*i.e.*, Counts II-IV).[11]

**B. Substantive Defects**

    i.    § 1983 (Count I)

Plaintiffs' § 1983 claim asserts that the flooding and demolition of the Property constitute takings in violation of the Constitution. Compl. at 7. This assertion lacks merit.

"A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state

---

[11] The Court acknowledges Defendant's federalism argument regarding the pending Bayonne Municipal Court proceedings. ECF No. 27 at 20-23. Defendant also contends that Mahamed lacks standing to assert these claims because it was Azma, not Mahamed, who was the record owner of the Property during the relevant time period. *Id.* at 40-41. The Court need not reach these arguments given the numerous other bases for dismissal discussed in this Opinion.

or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). However, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Thus, although a municipality cannot be held liable under a theory of vicarious liability, it can be held responsible "when the injury inflicted is permitted under its adopted policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694).

As to the flooding aspect of the claim, Plaintiffs offer no evidence demonstrating that Defendant had a duty to fix the pipe that they acknowledged was located under their property.[12] *See* ECF No. 26-5, Ex. B, Pl. Interr. Resp. ¶ 13. Instead, all they offer are conclusory allegations like the "system is inadequate and clearly outdated which caused the flooding." ECF No. 30 at 6. Moreover, municipalities in New Jersey routinely refuse to service water pipes located beneath privately owned property. *See, e.g.*, *Kip's Ridge Condo. Ass'n v. Twp. of Montclair*, No. A-4910-07T3, 2009 N.J. Super. Unpub. LEXIS 1832, at *6-11 (N.J. Super. Ct. App. Div. July 15, 2009); *Minuskin v. Borough of Fair Lawn & Fair Lawn Sewer Dep't*, No. A-4596-01T5, 2003 N.J. Super. Unpub. LEXIS 4, at *2 (N.J. Super. Ct. App. Div. Apr. 25, 2003) (reiterating the sewer department policy which stated that "[i]f the problem exists between the home and the edge of the curb or roadway, it is the homeowners['] responsibility to repair"); *see also* N.J.S.A. §§ 59:4-1(-)2 (establishing that a public entity is only liable for injury caused by a condition on "public

---

[12] As discussed previously, while Plaintiffs initially asserted in their Complaint that the allegedly faulty pipe was "in front of and abutting" the Property, they have failed to substantiate that allegation. Compl. at 3. Moreover, through discovery, Plaintiffs have repeatedly conceded that the pipe is located under the Property, not in front. *See* ECF No. 26-5, Ex. B, Interr. Resp. ¶ 13; *see also* ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 64:1-17.

property," which is defined as any "real or personal property owned or controlled by the public entity"). Since Plaintiffs have not shown that Defendant owned or controlled the pipe under the Property, and Defendant affirmatively asserts that it did not, it therefore did not have a duty to fix the pipe, and thus, the failure to do so could not amount to a violation of Plaintiffs' federal rights.

Plaintiffs' claim based on the demolition of the dwelling fares no better. N.J.A.C. § 5:23-2.32(b) explicitly authorizes Defendant to conduct an emergency demolition of a property when, in the opinion of experts, "there is actual and immediate danger of failure or collapse of a building or structure or any part thereof which would endanger life," and permits Defendant to shift those costs to the owner of the demolished property. Twenty-four hours after the demolition notice is served on the record owner of the property, "demolition may proceed unless stayed by order of the Superior Court." Id. The Third Circuit has found that in the case of an emergency demolition where a building's "structural instability created an exigent circumstance that warranted immediate and decisive action," N.J.A.C. § 5:23-2.32 does not require a pre-deprivation hearing because of the "necessity of quick action." *Munoz v. City of Union City*, 481 F. App'x 754, 758 (3d Cir. 2012). Further, the demolition of a dangerous property cannot alone amount to a taking when a plaintiff retained ownership of the property after the demolition and can still put the property to "any number of beneficial uses." *Id.* at 759 ("[Plaintiff's] continuing possessory interest in the property prevents him from establishing a Takings Clause violation.").

Here, Plaintiffs were given notice that emergency demolition was required on their Property because, among other reasons, it "pose[d] a risk to the welfare of the public." ECF No. 26-7, Ex. H, Demo. Notice at 2. The notice also explained how to seek a stay, which Plaintiffs chose not to do. *See* id. Plaintiffs failed to demonstrate that any additional process was required, and they still retained ownership of the site after demolition. *See* ECF No. 26-5, Ex. C, M. Khan Dep. Tr. at 12:24-13:14 (indicating that Azma was the record owner of the Property after the

13

demolition); ECF No. 26-6, Ex. D, A. Kahn Dep. Tr. at 8:15-22 (same). Accordingly, the demolition was done in accordance with the law, and there is no evidence to suggest that the demolition was part of some policy or custom of Defendant that resulted in a violation of Plaintiffs' constitutional rights. The Motion is granted as to Count I.

    ii.    <u>Intentional Infliction of Emotional Distress (Count II)</u>

Plaintiffs' intentional infliction of emotional distress claim is based on Defendant's alleged "series of harassments" targeting Plaintiffs' "nationality and race," as well as the alleged "imposition of baseless tickets." Compl. at 8. The IIED claim is barred by statute.

Pursuant to N.J.S.A. § 59:2-10, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." "Thus, there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Conte v. Goodwin*, No. 19-8333, 2021 U.S. Dist. LEXIS 8618, at *26 (D.N.J. Jan 15, 2021) (quoting *Hoag v. Brown*, 397 N.J. Super. 34, 54 (N.J. Super. Ct. App. Div. 2007)); *see also Ward v. Barnes*, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008) (holding that there is no legal basis under N.J.S.A. § 59:2-10 for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress). Here, Defendant is a public entity and intentional infliction of emotional distress is an intentional tort. Because Defendant cannot be held vicariously liable for intentional infliction of emotional distress, the Motion must be granted with respect to Count II.

    iii.    <u>Extortion (Count III)</u>

Plaintiffs next argue that the act of "demanding a refund and money for the cost of demolition" by Defendant was extortion. Compl. at 9. However, since extortion is not a legally cognizable civil claim in New Jersey, the Motion is granted with respect to Count III. *See Triple*

*T Constr., L.L.C. v. Twp. of W. Milford*, No. 14-2522, 2014 U.S. Dist. LEXIS 80691, at *22 (D.N.J. June 11, 2014) ("We also agree with the District Court that [plaintiff] has not stated a cognizable claim for attempted blackmail or extortion. The District Court correctly concluded that these causes of action are criminal, rather than civil[.]" (quoting *Rader v. ING Groep NV*, 497 F. App'x 171, 175 (3d Cir. 2012))).

      iv.    <u>Trespass to Land, Chattel and Conversion (Count IV)</u>

Lastly, Plaintiffs contend that the "willful and malicious" "taking of [their] real and personal property constituted acts of [t]respass to land, trespass to chattel, and conversion." Compl. at 10-11. Like Plaintiffs' intentional infliction of emotional distress claim, this claim is also barred by N.J.S.A. § 59:2-10.

As mentioned above, N.J.S.A. § 59:2-10 prohibits suits against public entities for intentional torts committed by its employees. The torts of trespass to land, trespass to chattel, and conversion are intentional torts. *See, e.g.*, *Ross v. Lowitz*, 222 N.J. 494, 510 (N.J. 2015) ("A defendant is liable in trespass for an intentional[] entry onto another's land, regardless of harm.") (internal citations and quotation marks omitted); *LaPlace v Briere*, 404 N.J. Super. 585, 595 (N.J. Super. Ct. App. Div. 2009) ("Conversion is an intentional tort in that the defendant must have intended to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.") (internal citations and quotation marks omitted); *Kachirayan v. U.S. Bank, N.A.*, No. L-00960-16, 2018 N.J. Super. Unpub. Lexis 3903, at *50 (N.J. Super. Ct. Law Div. June 15, 2018) ("Trespass is, of course, an intentional tort."). The City of Bayonne, a public entity, is the only Defendant in this case.[13] *See* Compl. Since Defendant is immune against this type of

---

[13] The State of New Jersey is also included in the Complaint, but of course, it too is a public entity. *See* N.J.S.A. § 59:1-3. Regardless, it appears that the State of New Jersey was never served in this matter. The Court issued a call for dismissal pursuant to Federal Rule of Civil Procedure 4(m) on September 11, 2018. *See* ECF No. 7. Plaintiffs failed to provide proof of service as to the State of New Jersey and thus, all claims against it are dismissed.

claim, the Motion is granted with respect to Count IV.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for summary judgment is **GRANTED** in its entirety and the Complaint is dismissed with prejudice. An appropriate Order accompanies this Opinion.

DATED: June 30, 2021

　　　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**